O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$4,931.28 IN BANK ACCOUNT FUNDS FROM GOLDEN STATE BANK ACCOUNT NUMBER '2059. ET AL.<br><br>Defendants. | CASE NO. SA CV 15-0426-DOC (RNBx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I. **INTRODUCTION**

A bench trial on this civil forfeiture matter was held on November 10, 2016. Plaintiff United States asserts that the defendant assets—$4,931.28 in bank account funds from Golden State Bank account number '2059; $118,616.37 in bank account funds from Golden State Bank account number '2905; $8,053.58 from bank account funds from Golden State Bank account number '4899; $229,759.34 in bank account funds from Golden State Bank account number '4725; $11,029.20 in bank account funds from Bank of America account number '2354; one 2013 Nissan; one 2005 BMW; one 2010 Mercedes; one 2007 Toyota; and one 2012 Chevrolet—are subject to forfeiture. Plaintiff seek forfeiture under 18 U.S.C § 981(a)(1)(C), arguing that the assets were derived from proceeds traceable to mail fraud, wire fraud, and health care fraud.

The claimants are Todd Tucker, Dawn Tucker, Cair Medical, Rehab Fitness, Inc., and A-to-Z Solutions (collectively, "Cair"). Cair Medical, Inc. has claimed the following assets:

- $4,931.28 in bank account funds from Golden State Bank account number '2059;
- One 2013 Nissan (VIN: 1N6BFOKMXDN100216);
- One 2010 Mercedes (VIN: 4JGCB6FE6AA110653); and
- One 2007 Toyota (VIN: JTDKB20U177555915).

Todd Tucker and Dawn Tucker have claimed the following assets:

- $118,616.37 in bank account funds from Golden State Bank account number '2905; and
- One 2005 BMW (VIN: WBABD33445JY99036).

Todd Tucker has claimed the following assets:

- $11,029.20 in bank account funds from Bank of America account number '2354.
- One 2012 Chevrolet (VIN: lGNSKBE01CR16536l).

Rehab Fitness, Inc. has claimed the following assets:

- $8,053.58 in bank account funds from Golden State Bank account number '4899.

A-to-Z Solutions has claimed the following assets:

- $229,759.34 in bank account funds from Golden State Bank account number '4725. 11/17 Order ¶¶ 2–3.

The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

## II.   FINDINGS OF FACT

1. Medicare is a federally-funded health insurance program that primarily covers the elderly. *See* 42 U.S.C §§ 1395 *et seq*.
2. The Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS") is responsible for Medicare's administration.
3. Part B of the Medicare statute authorizes payments for outpatient care and the provision of durable medical equipment (DME). *See id.* §§ 1395k(a)(1), 1395m(j), 1395x(n); see also 42 C.F.R. Part 410 (scope of Part B benefits).
4. Todd Tucker ("Tucker") is the President, CEO, Compliance Officer and primary owner of Cair Medical.
5. Cair Medical is a durable medical equipment sales company, specializing in the provision of wheelchairs to patients in skilled nursing facilities ("SNF"). Order Granting Stipulation ("11/17 Order") (Dkt. 62) ¶ 4.
6. Todd Tucker also owns and controls two other companies: Rehab Fitness, Inc. and A-to-Z Solutions. *Id.*
7. In the year 2000, Tucker enrolled as a healthcare supplier with Medicare, allowing him to expedite the Medicare payment process. Tr. 8:7-13.
8. As part of the application process, Tucker stated he was familiar with the Medicare law, regulations, and instructions. *Id.* 8:17-20.

9. Cair provided numerous wheelchairs to Medicare beneficiaries residing in SNFs. 11/17 Order ¶ 5.
10. Cair staff would then prepare Medicare claims for payment for the wheelchairs. *Id.*
11. Tucker personally reviewed each claim and approved them for submission. *Id.*
12. As part of completing a claim form, a claimant provides the place of service. Tucker listed the place of service as either the patient's home or as a custodial care facility. *Id.*
13. Tucker states that he correctly stated the place of service. *Id.*
14. He contends that while the patients may have been in SNFs at the time of service, they were under "custodial stays" and therefore eligible for Part B coverage. *Id.*
15. Tucker sought to determine whether SNFs had distinct parts by asking the SNFs whether they had "a distinct area [where] custodial residents reside? (i.e., —wing, unit, floor, room)." *Id.*; Ex. 103 at CAIR 00022.
16. Tucker believed that a "distinct part" of a nursing facility could be an individual collection of rooms or beds. Tr. 10:23–11:1.
17. Tucker did not know that the CMS must approve a facility's designation as a distinct part. *See id.* at 11:13-17. However, during trial he agreed that, upon further reflection, he would "assume" that CMS would need to approve a distinct part. *Id.* at 94:20-22. At trial, the Court found Tucker's testimony credible.
18. From 2012 to 2014, Cair received six "fully favorable" verdicts from CMS administrative law judges stating that Cair was entitled to reimbursement for the costs of DME provided to patients residing in SNFs, after Cair's claims had initially been denied by the Qualified Independent Contractor in charge of determining eligibility for Medicare reimbursement. *See id.* at 54:11-18; *see also* Tr. Exs. 108–13. Three of these ALJ decisions specifically found that Cair was entitled for reimbursement because the patient was not on a "Part A" stay at the SNF facility they were lodged in. *See* Tr. Exs. 108, 110, 113. Another decision found that while Cair

1  was ineligible for reimbursement because the patient had been residing in a SNF on a
2  Part A stay, Cair had exercised reasonable care and was not at fault for the over
3  payment. *See* Tr. Ex. 109.

19. After receiving these six fully favorable decisions, on April 1, 2014, Cair received an "unfavorable" decision from an ALJ, upholding a decision not to reimburse Cair for DME. *See* Tr. Ex. 130. That ALJ concluded that Medicare would not reimburse for DME provided to a beneficiary residing in an SNF even if the beneficiary was receiving only a custodial level of care. *See id.* at 7. Tucker thought that this decision was due to a lack of evidence demonstrating that the patient was in a distinct part of SNF at the time of service. Tr. 56:6–57:18; *see also* Tr. Ex. 130 at 7 ("The letter provided by the SNF only confirmed that on that date of service the beneficiary was receiving custodial level of care at the SNF. Hearing testimony, there was no documentation to evidence that the beneficiary was indeed physically located in a distinct part of the SNF.").

20. Cair subsequently received two more "fully favorable" decisions ordering reimbursement for wheelchairs provided to beneficiaries in SNFs. *See* Tr. Ex. 114, 115. In both of those decisions, the ALJs found that Cair could be reimbursed for DME provide to patients in SNFs if the beneficiaries were there on custodial stays. *See id.*

21. Cair received over $11 million in reimbursement from Medicare for wheelchairs supplied to SNFs. Cair deposited the reimbursement proceeds into bank accounts controlled by claimants as follows:
    - Golden State Bank Account No. '2059 (the "Primary Proceeds Account") received over $11 million in Medicare proceeds.
    - Golden State Bank Account No. '4725 (the "Secondary Proceeds Account") received $5.4 million from the Primary Proceeds Account.
    - Golden State Bank Account No. '4899 received $16,200 from the Primary

  Proceeds Account and $24,200 from the Secondary Proceeds Account.

- Golden State Bank Account No. '2905 received $660,000 from the Primary Proceeds Account.
- Bank of America Account No. '2354 received $28,280.28 from the Primary Proceeds Account.
- Golden State Bank Account No. '2905 received $125,000 as proceeds from the sale of real property owned by Todd Tucker and Dawn Tucker in San Juan Capistrano, California.
- Golden State Bank Account No. '4725 received $225,000 from a revolving line of credit issued by Golden State Bank and secured by real property in Anaheim California owned by Todd Tucker and Dawn Tucker since 1998.
- Claimants purchased the 2012 Chevrolet Tahoe with $40,000 withdrawn from the Primary Proceeds Account.
- Claimants purchased the 2013 Nissan with $19,949.40 withdrawn from the Primary Proceeds Account.
- Claimants purchased the 2007 Toyota with $17,200 withdrawn from the Primary Proceeds Account.
- Claimants purchased the 2010 Mercedes with $40,216 withdrawn from the Primary Proceeds Account.

11/17 Order ¶ 8.

22. Pursuant to a federal seizure warrant, the government seized the defendant bank funds on October 17, 2014. *Id.*

23. The government seized the vehicles pursuant to federal seizure warrants on October 27 and 28, 2014. *Id.*

### III.  CONCLUSIONS OF LAW

24. This is a civil forfeiture action brought pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C).

25. The government seeks civil forfeiture of the bank accounts under 18 U.S.C. § 981(a)(1)(C). That section provides that property, real or personal, that is derived from proceeds traceable to "specified unlawful activity" is subject to forfeiture. § 81(a)(1)(C).

26. "Specified unlawful activity" is defined to include "any act or activity constituting an offense involving a Federal health care offense." § 1956(c)(7)(F). The government argues that Cair committed health care fraud under 18 U.S.C. § 1347.

27. Section 1347 applies to a person who "knowingly and willfully executes, or attempts to execute, a scheme or artifice . . . to defraud any health care benefit program . . . ."

28. The statutes also alternatively define "specified unlawful activity" as, "*knowing* that the property involved in a financial transaction represents the proceeds of some form of unlawful activity." § 1956(a)(1), (c)(1) (emphasis added). The government seeks forfeiture of the bank accounts under this provision, arguing Cair engaged in wire fraud as defined in 18 U.S.C. §1343 and health care fraud as defined in 18 U.S.C. § 1347.

29. The government seeks forfeiture of the vehicles under § 981(a)(1)(A), which states that any property that is "involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property" is subject to forfeiture.

30. Congress has specifically prohibited reimbursement for DME provided to patients in SNFs. Part B of Medicare provides reimbursements for "wheelchairs . . . used in the patient's home (including an institution used as his home other than an institution that meets the requirements of subsection (e)(1) of this section or section 1395i-3(a)(1) of this title)." 42 U.S.C. § 1395x(n). Section 1395i-3(a)(1) reads: "the term 'skilled nursing facility' means an institution (or a distinct part of an institution)" that fulfills certain criteria. Under the statute, therefore, patients in SNFs are explicitly excluded from Medicare Part B coverage of their wheelchairs.

7

31. Further, there is no indication in the statute that there might be a "distinct part" of an SNF where persons are on custodial stays and are thus entitled to Part B coverage. Congress has clearly stated Medicare Part B does not cover wheelchairs for patients residing in SNFs. *See also Cair Medical, Inc. v. Sylvia Mathews Burwell*, SACV 15-1677-DOC-(KES), 2016 WL 6520141 (Dkt. 28) (C.D.C.A. Sep. 12, 2016) (finding that Congress has prohibited Medicare reimbursements for wheelchairs provided to patients in SNFs).

32. To demonstrate the defendant assets are subject to forfeiture, the government must show that Cair acted knowingly. *See* § 1956(c)(1) ("Whoever, knowing that . . ."); § 1347 ("Whoever knowingly and willfully . . . ").

33. Under Ninth Circuit precedent, "knowingly" encompasses situations where a party has "positive knowledge" or "does not possess positive knowledge only because he *consciously* avoided it." *United States v. Heredia*, 483 F.3d 913, 918 (9th Cir. 2007) (internal citations omitted) (emphasis added). One acts knowingly when even without positive knowledge, they "act with an awareness of the high probability of the existence of the fact in question." *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976). This sometimes also termed "deliberate ignorance." *Id.* "A failure to investigate can be a deliberate action." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013).

34. A person may be found to have acted knowingly when they, "recognizing the likelihood of wrongdoing, nonetheless *consciously* refuse to take basic investigatory steps." *United States v. Anthony*, 545 F.3d 60, 64 (1st Cir. 2008) (emphasis added); *see United States v. Griffin*, 524 F.3d 71, 77 n.4 (1st Cir. 2008).

35. The United States Supreme Court has explained that a finding of deliberate indifference is proper in situations such as one where a person who knowingly deals in heroine seeks to argue that they were unaware the heroine was smuggled into the country. *See Jewell*, 532 F.2d at 701 (citing *Turner v. United States*, 396 U.S. 398,

|    |     |                                                                                     |
|----|-----|-------------------------------------------------------------------------------------|
| 1  |     | 416 & n.29 (1970)). The Court has said such an argument hinges on a "studied        |
| 2  |     | ignorance" that those heroine dealers are not entitled to. *See Turner*, 396 U.S. at 417; |
| 3  |     | *see also Anthony*, 545 F.3d at 64–65 (finding a willful blindness instruction      |
| 4  |     | appropriate where a defendant argued he was unaware he had an obligation to pay     |
| 5  |     | taxes and had filed a tax return falsely stating his income was zero).              |
| 6  | 36. | Here, Tucker made efforts at investigating whether the SNFs had distinct parts by   |
| 7  |     | inquiring as to whether SNFs had distinct parts. *See* 11/17 Order ¶ 5; Ex. 103 at  |
| 8  |     | CAIR 00022.                                                                         |
| 9  | 37. | Further, the statute states that an institution, other than a SNF, may be a person's |
| 10 |     | home, *see* § 1395x(n), which might explain why Todd Tucker indicated the place of  |
| 11 |     | service were the patients' homes or a custodial care facility.                      |
| 12 | 38. | Ultimately, "liability cannot attach where an incorrect submission results simply   |
| 13 |     | from a misunderstanding concerning what the applicable regulations require of a     |
| 14 |     | claimant." *Visiting Nurse Ass'n of Brooklyn v. Thompson*, 378 F. Supp. 2d 75, 95   |
| 15 |     | (E.D.N.Y. 2004).                                                                    |
| 16 | 39. | There is no evidence that Tucker thought that any of the evidence he presented to the |
| 17 |     | ALJs was false, or that he actively lied to the ALJs that he received favorable     |
| 18 |     | verdicts from—Tucker never told the ALJs that CMS had authorized a distinct part.   |
| 19 |     | Further, he provided sufficient evidence to the ALJs for two of them to determine he |
| 20 |     | was not entitled to a reimbursement—although one of those ALJs also found Tucker    |
| 21 |     | without fault for the error. *See* Tr. Exs. 109, 130. Further, based on the same    |
| 22 |     | evidence that convinced Tucker he was entitled to a reimbursement, all but one of the |
| 23 |     | ALJs appear to have been convinced that Cair was entitled to reimbursement. *See* Tr. |
| 24 |     | Exs. 108–15, 130. Accordingly, the ALJs seem to have been convinced by Tucker's    |
| 25 |     | interpretation of the Medicare statutes. Although the Court places no precedential  |
| 26 |     | value on the ALJ rulings, the fact that the ALJs, presumably experts in Medicare law, |
| 27 |     | were convinced by Tucker's arguments suggests Tucker was not wholly                 |
| 28 |     |                                                                                     |

unreasonable in reading the statutes as he did. Therefore, it does not appear that only way a person could hold Tucker's view of the statutes was through willful ignorance.

40. Additionally, the Court takes judicial notice under Federal Rule of Evidence 201 that the Medicare Appeals Council, in their decision against Cair's appeal for compensation for a wheelchair provided to a beneficiary in a SNF, stated that "[Cair] appears to have had a good faith misunderstanding of the requirements . . . ." *See Cair*, SACV 15-1677-DOC (KES) (Dkt. 15-2).

41. The government argues that Cair was in a fiduciary relationship with CMS. *See* Proposed Findings of Facts and Conclusions of Law ("Proposed FF&CL") (Dkt. 64) ¶ 12 (citing *United States v. Adebimpe*, 819 F.3d 1212, 1219 (9th Cir. 2016)). This may well be the case. However, the government has cited no case law for the proposition that a fiduciary relationship demonstrates *scienter* and the government has not brought claims for breach of fiduciary duty.

42. Upon a thorough review of the evidence, the Court concludes that the government has not proven by a preponderance of the evidence that Tucker or Cair consciously, willfully, or deliberately avoided knowledge that they were acting in violation of the Medicare statutes, or that Tucker or Cair knew that they were acting in violation of the statutes. The government has therefore failed to establish that Cair acted with the requisite scienter. Accordingly, the Court finds for Claimants and against Plaintiff.

## IV. CONCLUSION

The government is not entitled to forfeiture of the defendant assets. Claimants shall submit a proposed judgment consistent with this order by **January 23, 2017.**

DATED: January 6, 2017

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE